IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| United States of America, | |
| Plaintiff, | Criminal No. 24-084 (GMM) |
| v. | |
| Myrna Faria *also known as* Myrna Oliveras-Santiago | |
| Defendant. | |

**OPINION AND ORDER**

Before the Court is defendant Myrna Faria's ("Defendant") *Motion for De Novo Hearing to Review Bail Conditions Imposed* (Docket No. 40). For the reasons set forth below, Defendant's motion is **DENIED IN PART.**

**I. BACKGROUND**

On March 6, 2024, a grand jury returned an indictment charging the Defendant with Theft of Government Property in violation of 18 U.S.C. § 461; Mail Fraud in violation of 18 U.S.C. § 1341; Misuse of Social Security Number in violation of 42 U.S.C. § 408 (a)(8) and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A. (Docket No. 3). On March 14, 2024, during the initial appearance before Magistrate Judge Giselle Lopez-Soler ("Magistrate Judge"), the United States of America ("Government") did not move for detention but requested that the Defendant surrender her passport.

The Defendant opposed the Government's request and agreed with the pretrial services recommendation of release (Docket No. 8). The Magistrate Judge issued an *Order Setting Conditions of Release* releasing Defendant on her own recognizance. *See* (Docket No. 10). Since the Defendant informed that she did not know the location of her passport, the Magistrate Judge took the Government's request, that the Defendant surrender her passport, under advisement and ordered the Defendant to inform on the status of her passport. On March 21, 2024, the Defendant filed a *Motion in Compliance* in which she informed the Court that she found her passport and provided the same to her counsel. Furthermore, the Defendant reiterated her opposition to the setting of conditions of release. (Docket No. 13).

On May 20, 2024, during the second status conference, the Defendant's Counsel, AFPD Carmen Rodríguez-Morales ("AFPD Rodríguez") informed the Court for the first time that she had some concerns regarding "defendant's mental health and competency." The defense further informed the Court that she was investigating and gathering documents related to that matter. *See* (Minute Entry at Docket No. 19). On July 8, 2024, during the third status conference, the Government reported on certain developments regarding Defendant's mental health. Considering this new information, the Government believed that the Defendant should be

subject to supervised release. *See* (Minute Entry at Docket No. 21). Thereafter, the Government filed the *United States' Motion Requesting Setting of Conditions of Release*. (Docket No. 20). Therein, the Government informed that, considering the new information as to Defendant's mental health, it reiterated its request for the Court to set standard conditions of release, including mental health treatment, as deemed necessary by the U.S. Probation Office. (Id. at 2). The Government also argued "that in addition to the seriousness of the offenses charged, in which the defendant embezzled 1.8 million dollars in federal funds, abusing of her position of trust as a federal employee, with the high sentencing exposure this entails, the defense now raises concerns regarding defendant's mental health and competency." (Id.). Therefore, the Government argued that given the totality of the circumstances in this case, release on personal recognizance "will not reasonably assure defendant's appearance to further proceedings in this case. Consequently, standard conditions of release are warranted." (Id.).

On August 26, 2024, the *United States' Motion Requesting Setting of Conditions of Release* was referred to the Magistrate Judge. (Docket No. 23). On September 3, 2024, the Defendant filed a *Response to Motion for Setting Conditions of Release* in which she argued that the Government had not met its burden. *See* (Docket

No. 25). The Defendant argued that the new information as to her mental health is not new evidence that establishes that she would not appear in Court. (Id. at 2).

On September 24, 2024, the Magistrate Judge reopened the bail hearing. *See* (Docket No. 28). The Government moved the Court to impose the condition of a mental health evaluation and treatment, if deemed necessary by U.S. Probation Officer, and that Defendant surrender her passport. AFPD Rodríguez argued that the Defendant has appeared in court when it has been required of her and that she does not pose a risk of flight. The defense also informed the Court that she had already begun to search for an expert to begin the process of the mental health evaluation, if deemed proper by the expert. Furthermore, U.S. Probation Officer Emmanuel Bravo stated that the Defendant had not informed him of any mental health issues or treatment during their interview. After hearing the parties, the Magistrate Judge granted the Government's request. Accordingly, the Magistrate Judge issued a new *Order Setting Conditions of Release* and ordered that "[t]he [D]efendant shall surrender her passport to USPO and she shall submit to mental health evaluation and treatment as deemed necessary by USPO." (Docket No. 34).[1]

---

[1] The Magistrate Judge also included the basic conditions listed in 18 U.S.C. § 3142(b) and on Form AO 199A (Rev.16/19) (Order Setting Conditions of Release), which are imposed on every released defendant. with additional conditions pursuant to 18 U.S.C. § 3142(c).

On October 8, 2024, the Defendant filed a *Motion to Stay the Magistrate's Judge Decision of Bail Conditions and Motion to Extend Time to File an Appeal with the District Court*. (Docket No. 33). On October 9, 2024, during the fifth status conference, the request for an extension of time to file a legal memorandum to appeal the Magistrate Judge's decision on imposing conditions of release was granted. *See* (Minute Entry at Docket No. 36). The Government opposed and requested that the Court summarily dismiss Defendant's motion. (Id.).

On October 23, 2024, the Defendant filed a *Motion for De Novo Hearing to Review Bail Conditions Imposed*. (Docket No. 40). On October 28, 2024, the Court set the *De Novo* Hearing. *See* (Docket No. 41). The Court held the *de novo* hearing on October 30, 2024. *See* (Minute Entry at Docket No. 43). At the hearing, the Parties did not present witnesses nor additional evidence. The Government argued that basic conditions of release, coupled with the two conditions imposed by the Magistrate Judge should remain in effect. The Government underscored that the request for a mental health evaluation and treatment, if necessary, was initially brought up by AFPD Rodríguez during the status conference held on May 20, 2024. *See* (Docket No. 19). The Government also emphasized that it was not requesting detention.

On the other hand, AFPD Rodríguez argued that the Government did not meet its burden of proof and that there was no evidence that the Defendant would fail to appear in Court, since, to date, she has always responded to Court citations and has complied with the conditions imposed. As to the contested mental health condition, AFPD Rodríguez contended that an expert had been retained to conduct her own evaluation. Thus, imposing the condition that the Probation Office evaluate and treat the Defendant, could affect the expert's efforts, because her own evaluation is pending. The Defendant also argued that legal competency is a different matter to the setting of conditions that are otherwise imposed to assure the Defendant's appearance in Court. The Court then requested Probation Officers Anelisse Santiago ("Santiago") and Norman Rosario ("Rosario") to express their position as to the mental health condition imposed. After all, the Magistrate Judge had ordered the mental health evaluation and treatment, if it was "deemed necessary by the Probation Office." Both Probation Officers noted that the Defendant had complied with all the Probation Office's requests and instructions during its supervision. As to the mental health condition imposed, Santiago and Rosario posited that there has been no indication that the Defendant needs an evaluation up until that point. Santiago and Rosario preferred to wait for the report to be

submitted by Defendant's expert to determine how to proceed. As to the passport, AFPD Rodriguez informed that she would be providing it to the Probation Officers after the hearing. At the conclusion of the *de novo* hearing, the Court took the matter under advisement and maintained the *status quo* as to the conditions imposed but for the mental health condition.

## II. LEGAL STANDARD

A. Standard of Review of a Detention Order Pursuant to the Bail Reform Act

A district court reviews "a magistrate judge's order of detention or release under a *de novo* standard and 'need not defer to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Ramos-Meléndez, Crim. No. 24-77 (RAM), 2024 WL 1430783, at *3 (D.P.R. April 3, 2024) (*quoting* United States v. Cidraz-Santiago, 18 F.Supp.3d 124, 126 (D.P.R. 2014)); *see also* United States v. Tortora, 922 F.2d 880, 883, n. 4 (1st Cir. 1990); United States v. Rodriguez-Romero, 18 F.Supp.3d 116, 118 (D.P.R. 2014). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Cidraz-Santiago, 18 F.Supp.3d at 126.

In performing its duty, the district court must consider the statutory factors set forth by the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156 ("Bail Reform Act"), at 18 U.S.C. § 3142. *See*

Rodriguez-Romero, 18 F.Supp.3d at 118; U.S. v. Torres-Rosario, 600 F.Supp.2d 327, 330 (D.P.R. 2009).

B.   The Bail Reform Act

The Bail Reform Act contemplates a two-step analysis regarding the bail hearing. Step one, at 18 U.S.C. § 3142(b), provides for pretrial release on personal recognizance or unsecured appearance bond unless the court "determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." If the court determines there is "no risk," United States v. Mantecon-Zayas, 949 F.2d 548, 550 n. 3 (1st Cir. 1991) (per curiam), release must be ordered at this step with no additional conditions. 18 U.S.C. § 3142(b). If the court determines there is "some risk" of danger or failure to appear as required, the court proceeds to step two, at 18 U.S.C. 3142(c), and evaluates what are the least restrictive conditions listed in § 3142(c) that will serve as a reasonable guard. *See* United States v. Patriarca, 948 F.2d 789, 791 (1st Cir. 1991) (noting "some risk" standard); *see also* United States v. Neves, 11 F. App'x 6, 8 (1st Cir. 2001) (per curiam) (applying "some risk" standard); U.S. v. Snead, No. CR 12-132M, 2014 WL 4473773 (D.R.I. Feb. 4, 2014).

The Court should employ the 18 U.S.C. § 3142(g) factors in determining if a defendant presents "no risk" or "some risk" at the § 3142(b)-step. *See, e.g.*, United States v. Brown, 13-CR-80S, 2013 WL 5439716, at *2 (W.D.N.Y. Sept. 27, 2013); United States v. Jimenez-Rivera, 761 F.Supp.2d 3, 5 (D.P.R.2011); United States v. Karasik, 09-CR176-01-PB, 2009 WL 3809801, at *1 (D.N.H. Nov. 13, 2009). The factors to be considered include: (1) the nature and seriousness of the offense charged, (2) the weight of the evidence, (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drugs and alcohol abuse, and criminal history, and (4) the nature and seriousness of the danger to another person or the community posed by defendant's release. *See* 18 U.S.C. § 3142(g).

However, "[t]he case law provides little guidance limning the boundaries of what is enough to constitute "some risk" justifying the imposition of additional discretionary release conditions." U.S. v. Snead, 2014 WL 4473773, at *3. Nevertheless, a few guiding principles do emerge from the case law. "Relatedly, the risk of 'flight' includes not only the risk that the defendant will abscond, but also the risk that he will not appear as required." U.S. v. Snead, 2014 WL 4473773, at *3.

Section 3142 requires judicial officers to impose the least restrictive release conditions that will "reasonably assure the

appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). Therefore, at step two, after the Court has concluded that there is some risk of flight and decided to impose discretionary release conditions, it must consider the factors laid out in 18 U.S.C. § 3142(g) and impose those conditions that are the least restrictive. United States v. Ploof, 851 F.2d 7, 9 (1st Cir. 1988). This analysis must amount to an individualized bail determination tailored to the facts pertaining to the defendant. United States v. Patriarca, 948 F.2d at 794 (detention decision must be made individually based on the evidence regarding the particular defendant); Tortora, 922 F.2d at 889 n. 10 ("[E]ach bail applicant must be screened individually.").

Conditions of release are subject to an "independent" standard of review, "giving deference to the determination of the district court." United States v. Patriarca, 948 F.2d at 791. "The court has broad discretion in determining which condition or combination of conditions are necessary to ensure the defendant's appearance and protect the public." United States v. Jones, CR. 10-50015-01, 2010 WL 4024927, at *3 (D.S.D. Oct. 13, 2010).

## III. ANALYSIS

The Defendant requests a modification of the pretrial release conditions imposed by the Magistrate Judge after the reopening of the detention hearing. The Defendant is currently under basic conditions of release in addition to conditions requiring her to surrender her passport and "submit to mental health evaluation and treatment as deemed necessary by USPO." (Docket No. 34). Here, the parties do not dispute that the Defendant should be released pending trial. However, the controversy stands as to whether she should be released on her own recognizance or under certain conditions.

After reviewing the parties' submissions and the record of the proceedings before the Magistrate Judge, the Court is required to make a *de novo* determination whether there is "no risk" or "some risk" of either danger or nonappearance, and, if there is, to review the conditions to be sure that they are the least restrictive to address that risk in light of the factors for consideration laid out in 18 U.S.C. § 3142(g). Therefore, as to the first step, the Court addresses the Section 3142(g) factors in turn.

A.      Defendant's Risk of Flight

    1.      The Nature and Circumstances of the Offense Charged

Although the Defendant is accused of a non-violent, non-presumption offense, the nature of the crime raises serious concerns about whether she would appear at future court hearings. The Defendant is charged with a total of seventeen (17) counts involving theft of government property, mail fraud, misuse of Social Security number, and identity theft. The accusations against the Defendant include that the Defendant put up a scheme to defraud the Social Security Administration, where she was employed, by submitting false claims, approving fraudulent claims, submitting her own bank and information to receive beneficiary proceeds, and using the identity of real people she thought were deceased. The indictment charges that she abused her position of trust as a federal employee and embezzled 1.8 million dollars in federal funds. The crimes charged carry hefty statutory penalties. For example, the theft of government property charge alone exposes Defendant to a fine of not more than $10,000 or imprisonment of not more than 10 years, or both; and the mail fraud charge a fine or imprisonment of not more than 20 years, or both. *See* United States v. Melguizo, 824 F.2d 370, 371 (5th Cir.1987) ("We find that a possible sentence of ten years is also sufficient indication

that the offense is serious."). This factor weighs in favor of concluding that there is "some risk" of flight.

    2. <u>The Weight of the Evidence Against the Defendant</u>

  The Government did not provide any evidence or proffer as to this element. Therefore, it cannot be taken into consideration by the Court.

    3. <u>The History and Characteristics of the Defendant</u>

  Based on the record before the Court, the charges involve circumstances indicative of a significant risk of non-appearance beyond that associated with the basic elements of the charged offenses. Specifically, the charges at issue involve allegations of deceitful behavior and abuse of trust. To that extent, the Indictment establishes probable cause that the Defendant's conduct constituted part of a pattern of fraudulent dealings over the course of many years involving substantial sums, "using the identity of real people she thought were deceased" and submitting and approving false claims to the Social Security Administration, where she had been an employee until her retirement in 2019. (Docket No. 3); *see also* <u>United States v. George</u>, No. CR11-210RAJ, 2011 WL 3047693, at *1-2 (W.D.Wash. July 25, 2011) (unpublished) (ruling that defendant posed non-appearance risk, inter alia, because he had "used multiple aliases" and because "charged offenses demonstrate[d] a protracted scheme. . .to defraud the

Criminal No. 24-00084(GMM)
Page -14-

government"); United States v. Dreier, 596 F.Supp.2d 831, 832-33 (S.D.N.Y.2009) (citing record material showing that defendant was "a master of deceit and a doyen of dishonesty" in support of conclusion that "Government ha[d] more than satisfied its burden of proving. . .risk of flight").

    4.   The Danger Posed to the Community by the Defendant's Release

As to this factor, there is no evidence on record to suggest that Defendant's release poses any danger.

The Defendant argues that she should be released under her own recognizance because she has been complying with all instructions mandated by the Court and the U.S. Probation Office. *See* (Minute Entry at Docket No. 43 at 2). Regardless, the case law indicates that a defendant's compliance with the current conditions of pretrial release is not in and of itself grounds to modify those conditions. This is so because "[i]t is presumed that the defendant will abide by the conditions imposed and [her] demonstrated ability to do so is what allows [her] to remain on pretrial release. The fact that Defendant has complied with [her] conditions of release is what allows [her] to remain out of custody". United States v. Kube, No. 1:19-cr-00257-NONE-SKO, 2020 WL 1984178, at *5 (E.D. Cal. Apr. 27, 2020) (*citing* United States v. Hare, 873 F.2d 796, 799 (5th Cir. 1989)); *see also* United States v. Esposito, 354 F.Supp.3d 354, 360-61 (S.D.N.Y. 2019); United

States v. Ross, No. 3:23-c4-128-TAV-JEM, 2024 WL 1890087, at *4 (E.D. Tenn. Apr. 30, 2024); United States v. Chambers, No. 23-20009-DDC, 2023 WL 8254523, at *2 (D. Kan. Nov. 29, 2023); United States v. Johnson, No. 2:21-cr-00707-WJM, 2022 WL 375319, at *2 (D.N.J. Feb. 8, 2022); Gay, 2020 WL 5983880, at *3; United States v. Anderson, No. 18 CR 50034-1, 2020 WL 3545619, at *3 (N.D. Ill. June 30, 2020).

In addition, the record shows that, although the nature and seriousness of the risk of flight is not great, Defendant's motive to flee is palpable, for she faces potentially large sentences if convicted. This, together with the record of alleged deceit, including assumption of a false identity, certainly warrants a finding that there is "some risk" of nonappearance without any conditions. Hence, after careful consideration of all the record and the § 3142(g) factor, the Court finds that the Government has more than satisfied its burden of proving by a preponderance of the evidence that the Defendant, if released without conditions, would pose a genuine risk of flight. See 18 U.S.C. § 3142(g); See also United States v. Chimurenga, 760 F.2d 400, 403 (2d Cir.1985).

B.  Conditions of Release

Since the Court finds the existence of some risk, it should now consider the condition or combination of conditions of release that could act as a "reasonable guard" against the risk. United

States v. Patriarca, 948 F.2d at 791. This analysis calls for the consideration of all the relevant facts presented by both Defendant and the Government to fashion a release order that appropriately balances whatever risk may be posed by the Defendant against her liberty rights, mindful that she enjoys the presumption of innocence.

The nature and circumstances of the charges in this case, involving fraud and deceit, buttressed with the Defendant's history and characteristics —which include her character and mental health as directed by § 3142(g)(3)(A)— establish that some conditions need to be fashioned to reasonably assure appearance.

Basic supervision keeps Defendant in contact with the Pretrial Services Officer as the officer deems necessary to monitor compliance with other conditions. *See* Thomas J. Wolf, *What United States Pretrial Services Officers Do*, 61-Mar Fed. Probation 19, 21-22 (1997). Here, most importantly and as it has been demonstrated to date, supervision provides some assurance that the Defendant will remain mindful of, and, therefore, be more likely to abide by the conditions that she refrain from new criminal behavior and to remind her to appear for court proceedings.

As to the condition requiring the Defendant "to submit to mental health evaluation and treatment as deemed necessary by USPO," the Court grants the Defendant's request, since the matter

has become moot. During the *De novo* hearing, the Probation Officers Rosario and Santiago informed the Court "that there has been no indication, since the conditions were imposed, that the Defendant needs an evaluation" and they submitted that they would wait for the report to be submitted by Defendant's expert to determine how to proceed. (Docket No. 43 at 4-5).

Regarding the condition establishing that the Defendant surrender her passport, this condition remains unaltered. As a matter of fact, the Defendant has already surrendered it to the Probation Office. (Docket No. 43 at 5). Under 18 U.S.C. § 3142(c)(1)(B)(iv), a court may order a defendant to abide by specified restrictions on personal associations, place of abode, passport, or travel. Unlike most of the other conditions, a travel restriction could constitute a significant deprivation of liberty. *See* Harrington v. City of Nashua, 610 F.3d 24, 32 (1st Cir. 2010), 610 F.3d at 32. However, in this Circuit, to "restrict travel" is a boilerplate condition. Tortora, 922 F.2d at 882.

As discussed before, the Defendant's history and characteristics as well as the nature and seriousness of the offense suggest some risk of flight and non-appearance. Yet, this risk is adequately addressed by both the imposition of basic supervision by a Pretrial Services Officer and surrendering her passport. Accordingly, the Court finds that the travel restriction

limiting her to this District is the least restrictive condition that could be imposed. Further, if the Defendant wishes to travel abroad, she could file a motion with the Court and potentially be allowed to do so.

As it stands, the combination of conditions placed on the Defendant is the least restrictive combination to ensure the Defendant's appearance while on pretrial release.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's conditions are revised as follows:

It is ordered that the Defendant's release be subject to these conditions:

1) The Defendant shall comply with basic conditions set forth in 18 U.S.C. § 3142(b) and listed on Form AO 199A (Rev.16/19) (Order Setting Conditions of Release).

2) The Defendant shall surrender her passport to the U.S. Probation Office. She must present travel plans to her assigned Probation Officer and request permission to travel as set forth in this Opinion.

IT IS SO ORDERED.

In San Juan, Puerto Rico, November 7, 2024.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE